IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

              v.                                  15-CR-10-A

CHARLES WEBER,

                    Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Stephanie Lamarque, Assistant United States Attorney, of counsel, hereby files its Sentencing Memorandum.

For reasons which follow, the government respectfully requests that the Court impose a sentence of imprisonment concerning defendant CHARLES WEBER.  The government also requests that the Court order restitution in the amount of $190,547.50.

## I.      PROCEDURAL HISTORY

The defendant was charged by Indictment with two counts of Making and Subscribing a False Tax Return, in violation of Title 26, United States Code, Section 7206(1).

Count 1 charged that on or about April 15, 2009, the defendant made and subscribed a U.S. Nonresident Alien Income Tax Return (Form 1040NR) for the calendar year 2006, which was verified by a written declaration that it was made under the penalties of perjury, but which falsely stated that the defendant was a nonresident alien; that his only taxable income was from dividends; that he had not been present in the United States during calendar year 2006; and that he had not been engaged in the operation of a dental practice from which he derived gross receipts and sales and received income. Count 1 alleged that the defendant then and there well knew that he was a citizen of the United States; that he had received taxable income in addition to dividends; that he had been present in the United States during calendar year 2006; and that he was required by law and regulation to disclose the operation of his dental practice, the gross receipts and sales he derived therefrom, and the income from such practice.

Count 2 of the Indictment charged that on or about April 15, 2009, the defendant made and subscribed a U.S. Nonresident Alien Income Tax Return (Form 1040NR) for the calendar year 2007, which was verified by a written declaration that it was made under the penalties of perjury, but which falsely stated that the defendant was a nonresident alien; that his only taxable income was from dividends; that he had not been present in the United States during calendar year 2007; and that he had not been engaged in the operation of a dental practice from which he derived gross receipts and sales and received income. Count 2 alleged that the defendant then and there well knew that he was a citizen of the United States; that he had received taxable income in addition to dividends; that he had been present in the United States during calendar year 2007; and that he was required by law and

regulation to disclose the operation of his dental practice, the gross receipts and sales he derived therefrom, and the income from such practice.

A jury trial took place before this Court from August 14 - 21, 2018. The government presented the testimony of twenty witnesses. The defendant, who proceeded *pro se*, presented the testimony of his mother and took the stand on his own behalf. On August 21, 2018, the jury returned a verdict of guilty on both counts.

A presentence report was filed on October 22, 2018 (Dkt. 171). The PSR provides a detailed and thorough summary of the procedural history in this case, including the issues presented by defendant Weber during the course of his pretrial supervision in this case and the basis for the underlying criminal conduct in the Indictment.

## II.    SENTENCING PROCEDURE

Because the Guidelines and the sentencing range they produce in a case must be considered by the court, "a sentencing judge will normally have to determine the applicable Guidelines range," United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005), as "the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007). The framework in undertaking the Guidelines calculations is set forth in U.S.S.G. § 1B1.1, and in applying that framework, the judge is obligated to find all facts relevant to calculating the range, and make determinations as to the sentencing range that applies to the defendant. The standard of proof is preponderance of the evidence, see United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005), even when the court is making determinations of fact,

such as when the fact at issue is whether the defendant committed a crime other than the charged offense.  See United States v. Martinez, 525 F.3d 211, 215 (2d Cir. 2008); United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.").  The Guidelines range calculations are reviewed on appeal, so that "[a]n error in calculating the applicable Guidelines range is among the kinds of procedural error that renders a sentence unreasonable."  United States v. Folkes, 622 F.3d 152, 156 (2d Cir. 2010); see also United States v. Fagans, 406 F.3d 138, 141 (2d Cir. 2005) (in many cases "an incorrect calculation of the applicable Guidelines range will taint not only a Guidelines sentence, if one is imposed, but also a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference.").

Title 18, United States Code, Section 3553(a) requires that a sentencing Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  In determining the sentence, the Court must consider:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed--
    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)     to afford adequate deterrence to criminal conduct;
    (C)     to protect the public from further crimes of the defendant; and
    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for--

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

        (i)    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

. . .

(5)    any pertinent policy statement—

    (A)    issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under Section 994(p) of Title 28); and

    (B)    that, except as provided in Section 3742(g), is in effect on the date the defendant is sentenced.

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court is obligated to: (1) identify the Guidelines range supported by the facts; (2) treat the Guidelines as advisory; and (3) consider the Guidelines together with the other factors outlined in 18 U.S.C. § 3553(a).

United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006).  In order to "consider" the Sentencing Guidelines, as required by 18 U.S.C. § 3553(a)(4), the Court must determine the applicable Guidelines range in the same manner as before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which essentially rendered the Sentencing Guidelines advisory.  See Crosby, 397 F.3d at 112.  The Second Circuit, however, has cautioned:

> that it would be a mistake to think that, after Booker, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion . . . On the contrary, the Supreme Court expects sentencing judges faithfully to discharge their statutory obligations to 'consider' the Guidelines and all of the other factors listed in section 3553(a).

Crosby, 397 F.3d at 113-114 ("it is important to bear in mind that Booker and Section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."); cf., United States v. Sindima, 488 F.3d 81, 85-86 (2d Cir. 2007) (while a district court may impose a non-Guidelines sentence based upon Section 3553(a) factors already accounted for in the Guidelines range, it must explain why a Guidelines sentence did not sufficiently account for those factors.).  As long as the record reflects that the sentencing court was aware of the recommended Guidelines range and explained the decision to impose a different sentence, a "specific verbal formulation . . . demonstrat[ing] the adequate discharge of the duty to 'consider' matters relevant to sentencing," is not required.  United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005); see also United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006).

### III.    APPLICATION OF THE SECTION 3553(a) FACTORS

### 1.    Nature and Circumstances of the Offense

The defendant's crimes were serious and long-running, and the evidence at trial shows a concerted attempt by the defendant to justify not paying federal income tax because he did not like the way the government was using the money.  As noted in the PSR, the defendant failed to file tax returns for tax years 2004 and 2005 (the IRS filed substitute returns for the defendant), and further failed to file returns for the tax years 2008 through 2016.  The evidence at trial showed that for the years in question, the defendant had over $500,000 in gross business receipts.  (PSR ¶¶22-23).  Even if the Court were to credit the defendant's assertion that this income was not effectively connected to the United States, the defendant still was required to report the income on the form 1040NR, which he did not, despite signing the 1040NR forms under penalty of perjury.

The defendant's flouting of directions is also demonstrated in his interaction with IRS representatives.  Although initially agreeing to comply with IRS Revenue Officer Gilbert Reyes' directive to mail his 2006 and 2007 Forms 1040 directly to Officer Reyes in Buffalo, the defendant instead mailed completed 1040NR forms to the IRS Service Center in Austin, Texas, in an effort to thwart RO Reyes' directive and authority.  Moreover, the defendant attempted to obtain a $15,208.70 refund for the 2006 tax year.   (PSR ¶12).  Finally, when interviewed by IRS agents in February 2010 at his dental practice, he falsely stated that he had no assets, property or automobiles on hand (PSR ¶41), despite evidence that he owned the building housing his dental practice at 8433 Main Street, Williamsville, New York (PSR ¶122) and owned his vehicle at the time.

The defendant's post-plea conduct, in particular the voluminous filings challenging the Court's jurisdiction and the evidence presented at trial, further demonstrates that he has not accepted responsibility for his actions, and persists in attempting to avoid being held accountable for that criminal conduct. Thus, the length and scope of the defendant's criminal conduct calls for the imposition of a sentence within the guidelines.

### 2.      History and Characteristics of the Defendant

The evidence presented at trial demonstrated that the defendant did not commit these crimes as a result of economic troubles — indeed, he could have continued to live a comfortable life without committing any crimes. Nor did the defendant commit these crimes from a split-second decision but rather, committed these crimes over a period of time, as a result of concerted effort and planning.  Instead, based on the defendant's own testimony, he learned that the income tax was being misapplied by the government (PSR ¶49). The defendant's trial testimony showed a selective reading of antiquated court cases and no consultation with a tax expert or tax attorney.  He claims that he is one of a select group of individuals who, because they can trace their lineage to the time of the American Revolution, does not have to pay any tax on income. The defendant admitted that he cannot recall reading the instructions for the 1040NR, instead turning to inapplicable and irrelevant definitions in the Uniform Commercial Code, which conveniently fit his definition (or so he claims) for citizenship.  (PSR ¶¶ 50, 55).  Accordingly, it is clear that the defendant simply did not like paying taxes because he believed they were not being used as he thought they should, because, in his opinion, the income tax as practice today does not

support the government.  *See also* Defendant's Reply in Support of Judgment of Acquittal, (Dkt. 169).

While claiming not to be a citizen of the United States, the defendant continued to enjoy the benefits conferred by citizenship — traveling internationally on a United States passport, and presenting the passport to reenter the country, registering as a dentist, claiming under penalty of perjury as recently as February 2012 that he was a citizen (well after filing the 2006 and 2007 forms 1040NR), using his Social Security number to obtain payment from insurance companies, and voting in midterm and presidential elections. Moreover, despite the defendant's claims to be a citizen of New York State and not the United States, he did not pay New York State income tax for the years 2006 or 2007, and had not filed an income tax return with New York State since he filed a 2003 return in 2006. The defendant nevertheless applied for and received the New York State STAR property tax benefit for his Snyder, New York residence in September 2013. (See August 16, 2018 Trial Testimony of New York State Department of Taxation and Finance Disclosure Officer Ryan Messier).

The history and characteristics of the defendant, as outlined above, weigh in favor of a sentence of imprisonment.  He cannot be permitted to reap the benefits of citizenship, while avoiding the obligations that come along with it.

### 3.    The Need to Afford Adequate Deterrence

Under Section 3553(a), the need for the sentence to "afford adequate deterrence to criminal conduct," Title 18, United States Code, Section 3553(a)(2)(B), must be considered

by the Court. Here, the government respectfully submits that a sentence within the range of 27 to 33 months is necessary to serve this purpose.

A sentence within this range will deter others who believe they can avoid their obligation to pay income taxes while enjoying all of the benefits of citizenship, and disregard the lawful orders of the Court, acting in a way constituting contempt of those Court orders, and still avoid a jail sentence. It also will deter the defendant from engaging in future criminal conduct.

## IV. CONCLUSION

For the reasons set forth above, the government respectfully submits that a reasonable sentence in this case would be a sentence of between 27 and 33 months.

DATED: Buffalo, New York, November 26, 2018.

JAMES P. KENNEDY, JR.
United States Attorney

BY:   s/ STEPHANIE LAMARQUE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5894
Stephanie.Lamarque@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                 15-CR-10-A

CHARLES WEBER,

             Defendant.

_____

## CERTIFICATE OF SERVICE

     I hereby certify that on November 26, 2018, I electronically filed, the foregoing

**GOVERNMENT'S SENTENCING MEMORANDUM** and I mailed the foregoing by the

U.S. Postal Service to the following participant:

          Charles Weber
          25 Greenbreier Road
          Snyder, NY  14226

                                      s/ Jennifer L. Atkins